UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00168-GNS-LLK

ROBERT F. LANIER; KATHY L. CHERRY;
ROSE M. GOUGH; and PATRICIA L. RENFROW                                  PLAINTIFFS

v.

U.S. DEPARTMENT OF LABOR                                                  DEFENDANT

## MEMORANDUM OPINION & ORDER

Robert F. Lanier ("Lanier"), Kathy L. Cherry, Rose M. Gough, and Patricia L. Renfrow (collectively, "Plaintiffs"), bring this action for review of the Department of Labor's ("DOL") denial of their claims for benefits under Part B of the Energy Employees Occupational Illness Compensation Program Act of 2000 (the "EEOICPA"), 42 U.S.C. §§ 7384-7385s-16. For the reasons set forth below, Plaintiffs' claim is **DENIED**.

### I.     BACKGROUND

#### A.     Statutory and Regulatory Background

The EEOICPA provides benefits to covered employees who die or suffer from illnesses as a result of exposure to toxic substances in the course of their work for the Department of Energy ("DOE") and its predecessor agencies. Under Part B of the Act, a "covered beryllium employee" or her eligible survivor is entitled to a lump sum payment of $150,000 if she develops a covered beryllium illness. 42 U.S.C. §§ 7384s(a)(1), 7384l(7), 7384l(15). In addition, Part B provides that an employee's eligible survivors include her surviving spouse, and, if there is no surviving spouse, her children. *Id.* §§ 7384s(e)(1)(A)-(B), 7385s-3(d)(2)(A).

### A. *Filing a Claim for Survivor Benefits*

To achieve survivor benefits under Part B of the Act, a claimant must file a claim with DOL's Office of Workers' Compensation Programs ("OWCP") demonstrating that she is an eligible survivor of a "covered beryllium employee"—i.e., an employee exposed to beryllium while employed at a DOE facility—and that the employee died of "chronic beryllium disease" ("CBD").[1] *Id.* §§ 7384s(a)(1), 7384l(8); 20 C.F.R. §§ 30.100, -.101. To establish a diagnosis of CBD from an employee's work-related beryllium exposure, certain statutory criteria must be met depending upon whether the claimed diagnosis was prior to or on and after January 1, 1993:

> (A) For diagnoses on or after January 1, 1993, beryllium sensitivity (as established [by abnormal lymphocyte proliferation test performed on either blood or lung lavage cells]) together with lung pathology consistent with [CBD], including—
> (i) a lung biopsy showing granulomas or a lymphocytic process consistent with [CBD]
> (ii) a computerized axial tomography scan showing changes consistent with [CBD]; or
> (iii) pulmonary function or exercise testing showing pulmonary deficits consistent with [CBD].
>
> (B) For diagnoses before January 1, 1993, the presence of—
> (i) occupational or environmental history, or epidemiologic evidence of beryllium exposure; and
> (ii) any three of the following criteria:
> > (I) Characteristic chest radiographic (or computed tomography (CT)) abnormalities.
> > (II) Restrictive or obstructive lung physiology testing or diffusing lung capacity defect.
> > (III) Lung pathology consistent with [CBD].
> > (IV) Clinical course consistent with a chronic respiratory disorder.
> > (V) Immunologic tests showing beryllium sensitivity (skin patch test or beryllium blood test preferred).

42 U.S.C. § 7384l(13).

---

[1] When documentation establishes that the employee worked at a DOE facility during a period of time when beryllium dust, particles, or vapor may have been present, the employee's exposure to beryllium is presumed. *Id.* § 7384n(a).

### B. *Reviewing a Claim*

After submitting the documentation necessary to develop the claim, the OWCP district office issues a recommended decision informing the claimant of its recommended findings of fact and conclusions of law. 20 C.F.R. §§ 30.300, -.306. Thereafter, the claimant may file written objections to the recommended decision with the Final Adjudication Branch ("FAB"). *Id.* § 30.310. The FAB will consider any objections and issue a final decision on the claim. *Id.* §§ 30.300, -.316. The claimant then has 30 days to request that the FAB reconsider its decision. *Id.* § 30.319(a). "If the FAB denies the request for reconsideration, the FAB's original decision is considered 'final' on the date the request is denied . . . ." *Id.* § 30.319(c)(2).

At any time thereafter, a claimant may file a written request with the Director of the OWCP's Division of Energy Employees Occupational Illness Compensation to reopen a claim based on new evidence demonstrating covered employment or exposure to a toxic substance. *Id.* § 30.320(b). If the Director decides that the matter raised by the request is material to the claim, the Director will reopen the claim and return it to the district office for further development. *Id.* § 30.320(b)(1). The Director's decision as to whether to reopen a claim is discretionary and not subject to administrative review, and, the decision to deny a reopening request is not subject to judicial review when based on the fact that the claimant submitted no new evidence. *Id.* § 30.320(c); *Berry v. United States Dep't of Labor*, 832 F.3d 627, 636 (6th Cir. 2016).

### B. **Factual Background**

Louis Lanier ("Louis") worked for a contractor that stationed him at the Paducah Gaseous Diffusion Plant ("PGDP") in Paducah, Kentucky, from 1951 to 1953. (Administrative Record 322, DN 53-2 [hereinafter AR]). He died in 1991, and his wife died in 1992. (AR 303).

In 2004, Plaintiffs—all of whom are Louis' children—filed claims for benefits under Parts B of the EEOICPA,[2] asserting that Louis' employment at the PDGP caused him to develop thrombocytopenia, liver disease, and kidney disease. (AR 659-72). Instead of issuing a recommendation regarding Plaintiffs' Part B claims, the district office informed Plaintiffs that, though the alleged conditions were not compensable under Part B, the medical evidence submitted to prove those conditions raised the possibility that Louis had CBD. (AR 307-14, 317-19). As such, the district office directed Plaintiffs to submit additional evidence showing that Louis developed CBD as a result of working at the PGDP. (AR 317-19).

Plaintiffs never submitted additional evidence supporting a diagnosis of CBD, and, eventually, the district office recommended and the FAB concluded that Plaintiffs' Part B claims should be denied. (AR 155-70, 172-84). Both branches found that the alleged conditions—thrombocytopenia, liver disease, and kidney disease—were not compensable under Part B. (AR 165-66, 176-79). Further, even though Plaintiffs did not claim entitlement to Part B benefits on the ground that Louis developed CBD, both branches determined that Plaintiffs' medical evidence failed to establish a CBD diagnosis. (AR 165-66, 176-79). In reaching this conclusion, the district office and FAB relied on a report that the District Medical Consultant prepared after reviewing Plaintiffs' medical evidence. (AR 165-66, 176-79). The report found that the evidence did not establish a diagnosis of pre-1993 CBD. (AR 189-90).

On November 19, 2010, Plaintiffs' authorized representative, Gary S. Vander Boegh ("Vander Boegh"), submitted a new claim on behalf of Lanier, asserting that Lanier was entitled to Part B survivor benefits on the ground that Louis developed CBD as a result of his

---

[2] Plaintiffs also brought claims under Part E of the EEOICPA, but the FAB decided that Plaintiffs were not entitled to Part E benefits. (AR 172-84, 206-31). Subsequently, this Court held that it lacked jurisdiction to review that decision. (Mem. Order & Op. 5, DN 31). Accordingly, Plaintiffs' Part E claims will not be addressed further.

employment at the PGDP. (AR 136-37). Vander Boegh included the following documents in support of this claim: (1) a copy of a final decision issued by FAB on an unrelated claimant's CBD claim, (2) copies of Louis' medical records, and (3) an August 25, 2005, internal agency memorandum addressing the condition of CBD as contributing to other chronic pulmonary diseases. (AR 103-35).

Less than two weeks later, the district office sent Vander Boegh a letter (the "2010 letter") explaining that it would not issue a recommendation regarding to Lanier's CBD claim. (AR 51-54). In the 2010 letter, the district office advised Vander Boegh that the FAB had already concluded that Louis' medical records failed to establish a diagnosis of pre-1993 CBD. (AR 51-54). It then explained that it would not address Lanier's claim unless and until he presented new evidence to substantiate a CBD diagnosis. (AR 54). In submitting a letter rather than a recommended decision, the district office acted according to the following internal policy:

> The [claims examiner] has discretion to conclude that a new claim has been adjudicated in a prior determination under the EEOICPA. . . . [N]o Recommended Decision is needed if a Final Decision has previously addressed a newly claimed condition. In such instances, the claimant is notified that the condition has previously been decided and that no further action will be taken without a request from the claimant to reopen the prior final decision.

Federal (EEOICPA) Procedure Manual, Chapter 2-1600.3a(1) (October 2009).[3]

### C. **Procedural History**

Thereafter, Vander Boegh, on behalf of Plaintiffs, asked the district director to reopen all of Plaintiffs' claims. (AR 19-31). The district director denied the request, noting that Plaintiffs had not submitted new evidence relevant to whether Louis had CBD. (AR 1-12). On August 25,

---

[3] A copy of the procedure manual is available online. *See* Office of Workers' Comp. Programs, U.S. Dep't of Labor, EEOICP Procedure Manual, http://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/unifiedpm/Unifiedpm_part2/Chapter2-1600RecommendedDecisions.htm (last visited October 23, 2017).

2014, Plaintiffs filed the Complaint in the present action seeking judicial review of the agency's decisions regarding their Part B and Part E claims. (Compl. ¶¶ 8-27, DN 1). On October 27, 2014, DOL moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and (6), asserting that the statute of limitations—along with the EEOICPA and Sixth Circuit precedent—rendered judicial review improper with respect to each of the agency's final decisions. (Def.'s Mem. Supp. Mot. Dismiss 7-15, DN 5).

This Court issued a Memorandum Opinion and Order (DN 31) addressing DOL's motion to dismiss. In that opinion, the Court noted Plaintiffs' Complaint failed to specify which agency decisions warranted judicial review. (Mem. Order & Op. 4-5). Nonetheless, the Court gave Plaintiffs the benefit of the doubt and assumed that Plaintiffs sought judicial review of all agency decisions, including: (1) FAB's 2006 and 2007 decisions denying Plaintiffs' request for Part E benefits, (2) FAB's 2007 decision concluding that Louis did not develop CBD (the "2007 decision"), (3) the district office's 2010 letter declining to review Lanier's claim that Louis had CBD, and (4) the district director's 2014 decision rejecting Plaintiffs' request to reopen their claims. (Mem. Order & Op. 4-10). The Court then granted DOL's motion as to all of Plaintiffs' claims *except* for their claim concerning the district office's 2010 letter. (Mem. Order & Op. 5-10). In reaching its decision the Court reasoned that if the 2010 letter constituted a final agency decision, it was issued within the statute of limitations and may be jurisdictionally proper and entitled to judicial review. (Mem. Order & Op. 8-10).

The parties then filed briefs addressing the question whether the district office's 2010 letter declining to issue a recommended decision with respect to Lanier's CBD claim was arbitrary and capricious. (*See* Pls.' Opening Br. 1-27, DN 59; Def.'s Resp. Br. 12-20, DN 60). This matter is ripe for adjudication.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331 because a federal question under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, is presented.

## III. DISCUSSION

Only one question survived DOL's motion to dismiss: whether the district office's 2010 letter declining to review Lanier's CBD claim was arbitrary and capricious. Plaintiffs claim that the 2010 letter constitutes an arbitrary and capricious agency action.[4] (Pls.' Reply 2-8, DN 63). DOL argues that this Court should not address the propriety of 2010 letter because the FAB's 2007 decision constitutes the final agency decision on the issue whether the submitted medical evidence supported a finding that Louis developed CBD. (Def.'s Resp. Br. 12-14). DOL also asserts that, even if the letter is reviewable, the decision contained within it was neither arbitrary nor capricious. (Def.'s Resp. Br. 14-18). The Court will address each of DOL's arguments.

### A. Final Agency Decision

"[A]dministrative orders are not reviewable unless" they are final. *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 112-13 (1948). For agency action to be final, "two conditions must be satisfied": (1) "the action must mark the 'consummation' of the agency's decisionmaking process;" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted); *see also Sierra Club v. Slater*, 120 F.3d 623, 631 (6th Cir.

---

[4] Plaintiffs raised this argument in their reply brief. Their opening brief makes no mention of the 2010 letter; instead, they argued that this Court should review the district director's decision rejecting Plaintiffs' reopening request. (*See* Pls.' Opening Br. 7-10). Plaintiffs raise this argument notwithstanding the fact that this Court has already concluded that this decision is not reviewable. (Mem. Order & Op. 5-8). The Court will not review the district director's decision rejecting Plaintiffs' reopening request because the denial is not appealable. *See Berry*, 832 F.3d at 635-36.

1997) ("In determining whether a particular agency action is final, '[t]he core question is whether the agency has completed its decisionmaking process . . . .'" (citation omitted)).

The Sixth Circuit has held that an agency's decision to forego supplementing a prior decision is not a final decision.[5] *Slater*, 120 F.3d at 631. In *Slater*, the plaintiffs brought suit against employees of the Federal Highway Administration ("FHWA"), claiming that the employees violated environmental statutes when they failed adequately to prepare an Environmental Impact Statement ("EIS") prior to constructing a highway. *Id.* at 628-29. As part of their suit, the plaintiffs wanted the court to review the FHWA's decision approving the EIS, but, because that decision fell outside the limitations period, plaintiffs characterized their claim as a challenge to the FHWA's decision *not to* issue a supplemental EIS.[6] *Id.* at 629-30. The Sixth Circuit declined to review that decision, reasoning that it did not constitute a final decision because it did not reflect the entirety of the agency's decision-making process. *Id.* at 631. The Sixth Circuit also noted that the plaintiffs' position "defie[d] logic" because, though they casted their claim as a challenge to the FHWA's decision *not to* supplement the EIS, they only "complain[ed] of actions taken . . . at the time" the FHWA *approved* the EIS, all of which fell outside the limitations period. *Id.*

*Slater* suggests that the FAB's 2007 decision finding that Louis did not develop CBD—rather than the district office's 2010 letter to Vander Boegh explaining that it would not review Lanier's CBD claim—constitutes DOL's final action on the issue. As in *Slater*, the district office's 2010 letter does not represent the totality of the agency's decision-making process. *See*

---

[5] The Court is not aware of any reported decision addressing whether a district office's correspondence to an EEOICPA claimant explaining that the claimant's claim has already been resolved and does not warrant further review constitutes a final agency decision.
[6] In substance, the plaintiffs only attacked the FHWA's original decision.

8

*id.* at 631. Indeed, the FAB thoroughly reviewed Plaintiffs' medical evidence in its 2007 decision and found that it did not establish that Louis had CBD. (AR 155-170).

Moreover, like the plaintiffs in *Slater*, Plaintiffs' challenge of the district office's 2010 letter is *actually* a challenge of the FAB's 2007. *See Slater*, 120 F.3d at 631. Broken down, Plaintiffs argue that, because the FAB's 2007 decision *should not* have addressed whether Louis developed CBD, the district office *should* have issued a recommended decision as to Lanier's CBD claim rather than the 2010 letter. (Pls.' Reply 2-8). Assessing the propriety of the 2010 letter would necessitate review of the FAB's 2007 decision; but, as this Court has already held, the statute of limitations bars review of that decision. (Memo. Order & Op. 5). Therefore, Plaintiffs' position "defies logic because [Plaintiffs] complain [only] of actions taken by" the FAB in 2007—all of which occurred outside the limitations period. *See Slater*, 120 F.3d at 631.

In sum, the FAB's 2007 decision—not the district office's 2010 letter—represents the final agency decision regarding the issue whether the submitted medical evidence established that Louis developed CBD as a result of his employment at PDGP. Therefore, the 2010 letter is not subject to judicial review. *See Chicago & S. Air Lines*, 333 U.S. at 112-13.

### B. <u>Propriety of the 2010 Letter</u>

Notwithstanding the analysis above, the Court will address the propriety of the district office's 2010 letter on the assumption that it constitutes a final agency decision. Though not explicit, Plaintiffs appear to take issue with the fact that the district office declined to produce a recommended decision regarding Lanier's "new" CBD claim. (Pls.' Reply 2-8). They seemingly assert that federal regulations require the district office to issue a recommended decision anytime a claimant files a new claim, regardless whether the agency has already reviewed that claim in prior proceedings. (Pls.' Reply 2-8). In essence, then, Plaintiffs contend

9

that Chapter 2-1600.3(a)(1) of DOL's procedure manual—which allows district offices to forego review of claims that have been "adjudicated in a prior determination"—contradicts federal regulations and that, as such, decisions made pursuant to that procedure are arbitrary and capricious. *See* Federal (EEOICPA) Procedure Manual, Chapter 2-1600.3a(1) (October 2009). DOL contends that the policy manual embodies its interpretation of its own regulations and, as such, is entitled to deference on judicial review. (Def.'s Resp. Br. 17-18).

Given the parties' arguments, the Court must address two questions in reviewing the appropriateness of the 2010 letter. The threshold question is the extent to which DOL's procedure manual is entitled to deference. The secondary question is, in light of any deference afforded to DOL's procedure manual, whether the 2010 letter constitutes arbitrary and capricious agency action. The Court will address each of these issues in turn.

### 1. *Deference*

The provision in the procedure manual at issue is Chapter 2-1600.3(a)(1), which states that the claims examiner "has the discretion to conclude to conclude that a new claim has been adjudicated in a prior determination under the EEOICPA," and that, no "Recommended Decision is needed if a Final Decision has previously addressed a newly claimed condition." Federal (EEOICPA) Procedure Manual, Chapter 2-1600.3a(1) (October 2009). That provision cites 20 C.F.R. § 30.300 as its enabling regulation, which in turn cites 42 U.S.C. § 7385s-10 among its enabling statutes. The pertinent enabling statute states that the "Secretary [of Labor] shall administer [the EEOICPA program]," and Section 30.300 of the regulations enacted pursuant to that statute provides that "district offices will issue recommended decisions with respect to claims for entitlement under Part B and/or Part E of EEOICPA . . . ." Thus, Chapter 2-

1600.3(a)(1) represents DOL's interpretation of 20 C.F.R. § 30.300, a regulation that DOL issued to administer the EEOICPA program. *See* 42 U.S.C. § 7385s-10(a).

An agency's informal interpretation of its own, unambiguous regulations—such as DOL's construal of Chapter 2-1600.3(a)(1)—is entitled to *Skidmore* deference. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587-88 (2000) (noting that interpretations of regulations "such as those in . . . agency manuals" are not entitled to the force of law when the regulation at issue is unambiguous) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)); *Watson v. Solis*, No. 3:09-CV-131, 2010 WL 3781710, at *7 (E.D. Tenn. Sept. 21, 2010), *aff'd,* 693 F.3d 620 (6th Cir. 2012) ("[W]hen an agency's interpretation of a statute 'does not take the form of a regulation issued following notice and comment rulemaking,' but rather, is 'offered through an informal medium' (which includes agency manuals), the agency is entitled to the less deferential *Skidmore* review." (internal quotation marks omitted)). "Under *Skidmore,* all the Court must do is determine whether the DOL has provided a well-reasoned, persuasive justification for its interpretation." *Watson*, 2010 WL 3781710, at *7 (citing *Chao v. Occupational Safety & Health Review Comm'n*, 540 F.3d 519, 523 (6th Cir. 2008)).

Here, the Court finds that Chapter 2-1600.3(a)(1) is a reasonable and persuasive construction of 20 C.F.R. § 30.300. The text of the procedure manual suggests that DOL adopted Chapter 2-1600.3(a)(1) to promote efficiency and finality by avoiding duplicative claims. *See* Federal (EEOICPA) Procedure Manual, Chapter 2-1600.3a(1) (October 2009). The justification seems implicit for not requiring the district office to issue a recommended decision on a claim that has already been reviewed—particularly when the claimant fails to present new evidence supporting the claim. *See Watson*, 2010 WL 3781710, at *9 (finding DOL's interpretation of EEOICPA reasonable under *Skidmore* because it would lead to efficient

11

administration of the EEOICPA program). Accordingly, the Court will defer to DOL's interpretation of 20 C.F.R. § 30.300. *See Skidmore*, 323 U.S. at 140.

## 2. *Arbitrary and Capricious*

Having decided that DOL's interpretation of its own regulation was persuasive under *Skidmore*, the Court must now decide whether the district office acted arbitrarily or capriciously when it issued the 2010 letter rather than a recommended decision. Arbitrary-and-capricious review is deferential. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007). Those contesting an agency's decision must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *McDonald Welding & Mach. Co. v. Webb*, 829 F.2d 593, 595 (6th Cir. 1987) (citations omitted).

Here, the district office's 2010 letter notifying Vander Boegh that it would not review Lanier's CBD claim was neither arbitrary nor capricious. The FAB's 2007 decision had already concluded that the submitted medical evidence did not establish that Louis developed CBD; as such, the district office acted appropriately in issuing the 2010 letter rather than a recommended decision. Moreover, the 2010 letter followed DOL's procedure manual precisely: it informed Vander Boegh that it would not review Lanier's CBD claim and advised him that, if he discovered new evidence suggesting that Louis developed CBD, he could ask the director to reopen the claim. (AR 51-54). Thus, the district office's 2010 letter does not constitute "a clear and prejudicial violation of applicable statutes or regulations," and, therefore, was neither arbitrary nor capricious. *See McDonald Welding & Mach. Co.*, 829 F.2d at 595 (citations omitted).

## IV. CONCLUSION

The district office's 2010 letter explaining that it would not review Lanier's CBD claim does not constitute a final agency decision, and, therefore, is not reviewable. Additionally, even if that letter were a final agency decision, this Court would affirm it on the ground that it was neither arbitrary nor capricious. Accordingly, this case is **DISMISSED**, and the Clerk shall strike this case from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**

November 1, 2017

cc: counsel of record